[Crim. No. 10563. Second Dist., Div. Two. Mar. 24, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES REED, Defendant and Appellant.

James Reed, in pro. per., and Arthur Mabry, under appoint-ment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Charles R. Kocher, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Trial by jury having been duly waived, appellant was tried by the court and found guilty of first degree burglary and assault with a deadly weapon as charged in the two separate counts of the information. The judgment decrees that appellant "be punished by imprisonment in the State Prison for the term prescribed by law, on said Counts."

Appellant's contentions on this appeal from the judgment are: (1) that the evidence is insufficient to support the finding that he was guilty of burglary; and (2) that the court erred in leaving it to the Parole Board to determine whether the sentences on the two counts should run consecutively or con-currently. The briefs indicate no material disagreement con-cerning the facts.

On the night of July 3, 1964, Henrietta Willis was visiting at the home of Josephine Melvin. During this visit Mrs. Willis answered a telephone call at the request of Mrs. Melvin. Appellant was the caller. Apparently recognizing Mrs. Willis' voice, he threatened her by saying, "Shu, you black bitch, if you don't stop messing in my business, I'm going to kill you."

Appellant vigorously pursued his demand to speak to Mrs. Melvin and asserted that he was determined "to collect money" that she owed him. Mrs. Melvin denied that she was indebted to him. When appellant continued to use offensive language threatening both Mrs. Melvin and Mrs. Willis, the latter hung up the telephone.

Immediately after the conclusion of this telephone call, Mrs. Melvin and Mrs. Willis went to the latter's home. Upon entering the house, Mrs. Melvin left her purse on the seat of a couch located near the door. This purse was black in color and contained $4.00 in currency and some change.

At about 10 o'clock on the same night appellant drove up in an automobile and parked in front of the home of Mrs. Willis. Appellant emerged from the vehicle, slammed the door. and repeated his threat to kill Mrs. Willis. Mrs. Willis, who had taken her father's hunting rifle from a closet, stood at the doorway and told appellant to get back into his automobile and not to come into her house. However, he continued to talk in a threatening manner and to move toward the door. Thereupon Mrs. Willis pointed the rifle at him and ordered him to come no further. Mrs. Melvin shouted, "Hold him until the police come, the police is on their way."

Thereupon appellant started running toward the door. Mrs. Melvin ran to a bedroom and hid in the closet. Mrs. Willis slammed the door in appellant's face, but he forced it open and broke the glass in the process. Appellant grasped at the rifle which Mrs. Willis held, and, after throwing her to the floor, he withdrew a knife from his pocket and declared, "If you don't turn it [the rifle] loose, I'm going to kill you." Appellant then opened the knife and began stabbing at Mrs. Willis. She received knife wounds on her arm and body. When she released the rifle, appellant attempted to strike her on the head with it but she was able to fend the blow with her hands.

Thereafter appellant left Mrs. Willis and proceeded into the bedroom of the house while Mrs. Willis ran to the home of a neighbor to call the police. When appellant left the house he was carrying the rifle and a black purse. When Mrs. Willis returned to the house, Mrs. Melvin was still hiding in the bedroom closet and her purse was missing from the couch. Appellant was taken into custody later the same evening by Officer Jurman of the Los Angeles police department. When taken into custody, appellant had $67.17 on his person and there was $15 in currency lying on the front seat of his automobile. The rifle was found on the rear seat. The purse itself was not found.

■ Appellant's arguments regarding the sufficiency of the evidence to sustain his conviction of burglary are adequately answered by the appropriate statement of the court in *People* v. *Jones,* 211 Cal.App.2d 63, 71-72 [27 Cal.Rptr. 429] : "Bur-

glarious entry may be inferred from the fact that appellant unlawfully and forcibly entered the home of another; there is no better proof that a burglar entered with intent to commit theft than a showing that he did commit it. [Citations.]'' And section 460 of the Penal Code provides that ''Every burglary of an inhabited dwelling house . . . committed in the nighttime . . . is burglary of the first degree.''

Here, according to appellant's own testimony, he went to Mrs. Willis' home to get money from Mrs. Melvin. The trial judge was entitled to believe this portion of appellant's testimony, and to disbelieve the remainder, including his statements to the effect that the money was owed to him by Mrs. Melvin. (*People* v. *Swanson,* 204 Cal.App.2d 169, 173 [22 Cal. Rptr. 178] (cert. den. 371 U.S. 958 [83 S.Ct. 516, 9 L.Ed.2d 505]; *People* v. *Carr,* 170 Cal.App.2d 181, 186 [338 P.2d 479].) This finding is given further support by Mrs. Melvin's testimony which contradicts that of appellant.

Furthermore, the record discloses that Mrs. Melvin's black purse was missing from the house and that appellant was seen leaving the house with a black purse. These factors provide a basis for the inference that appellant stole Mrs. Melvin's purse, and this in turn provides a basis for the inference that he entered the house with the intent to steal. (*People* v. *Jones,* 211 Cal.App.2d 63, 71-72 [27 Cal.Rptr. 429] (cert. den. 375 U.S. 847 [84 S.Ct. 100, 11 L.Ed.2d 74]); *People* v. *Owens,* 79 Cal.App.2d 290, 298 [179 P.2d 401].)

It is certainly true that appellant's repeated threats to kill Mrs. Willis provide a solid basis for the inference that he entered the house with the intent to assault her, but manifestly the existence of this intent does not negative the contemporaneous intent to commit theft. That a person might entertain at the same time both an intent to steal and an intent to assault or kill would appear to be self-evident. This commonsense proposition finds support in Burdick, Law of Crimes, section 131 (1946), and in the cases therein cited. (See also, *People* v. *Roldan,* 93 Cal.App. 677, 681 [270 P. 253].)

Appellant's arguments indicate a failure to recognize the elementary rule that before a finding of the trial court will be set aside on the ground of insufficiency of the evidence ''. . . 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . .' '' (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Although appellant makes no contention that the instant judgment imposes double punishment in violation of section 654 of the Penal Code, we deem it proper to observe that we agree with the Attorney General that any such contention in this case would be untenable.

The rules which govern in the application of section 654 of the Penal Code are fully enunciated in *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]. These rules have been consistently applied to various factual situations in *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Ridley,* 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124]; and *In re Cruz,* 64 Cal.2d 178 [49 Cal.Rptr. 289, 410 P.2d 825], among other recent decisions.

The key paragraph of the *Neal* decision reads as follows (p. 19) : *"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."* (Italics added.)

By its discussion of *In re Chapman,* 43 Cal.2d 385 [273 P.2d 817], the decision in *Neal* reaffirms the previously established rule that if the question of the divisibility of the transaction or the question whether the several offenses were incident to more than one objective is essentially *factual,* then and in that event the findings of the trier of the facts will not be disturbed. It was pointed out that *Neal,* unlike *Chapman,* was a case in which the nature of the uncontradicted evidence was such that there could be no supportable finding of divisibility or dual objectives.

Likewise in *People* v. *McFarland, supra,* 58 Cal.2d 748, the conclusion was inescapable that the 'defendant's burglarious entry of the hospital and the taking of an air compressor were parts of a continuous course of conduct and were necessarily motivated by one objective, namely, theft. Since the theft was the object of the burglary and one of the component elements thereof, the defendant could not be punished for both the burglary and the theft.

In the case at bench, however, we are presented with a very different picture. The instant record shows that the necessarily implied findings of the trial judge with respect to the divisibility of the transaction and the 'duality of appellant's objectives are not only supportable, but indeed are very strongly indicated by the dictates of common sense.

In this case there is proof (1) that very shortly before he went to the residence of Mrs. Willis, appellant had threatened to kill her and that he repeated that threat as he advanced toward the doorway of her apartment; (2) that at about the same time he had made statements to the effect that he was demanding money from Mrs. Melvin; (3) that appellant savagely stabbed with a knife the woman whom he had threatened to kill only a few moments previously; (4) that even after he had forcibly wrested the rifle from the hands of Mrs. Willis, he viciously struck her with it; and (5) that after Mrs. Melvin had taken refuge from the scene of violence by hiding in a closet, obviously in fear of her safety, appellant stole her purse.

It would seem more than reasonable to infer from the recited facts that appellant's aggravated assault upon Mrs. Willis was motivated by his vengeful desire to harm her as manifested by his repeated threats to kill her. It is an equally reasonable inference that appellant went to the Willis residence in pursuit of his announced objective to obtain money from Mrs. Melvin.

 The aggravated assault upon Mrs. Willis in this case was no necessary ingredient of the crime of first degree burglary because that crime was complete the instant appellant crossed the threshold of the inhabited dwelling in the nighttime with the intent to steal. (Pen. Code, § 460.)

Although they present factual situations distinguishable from that of the present case, the holdings and the rationale of the recent decisions of our Supreme Court in *People* v. *Ridley, supra,* 63 Cal.2d 671, 677-678, and *In re Cruz, supra,* 64 Cal.2d 178, 181, point rather clearly to the same conclusion.

Both these recent decisions follow a rationale embracing the time-honored doctrine that the law should seek ''to make the punishment fit the crime.'' Consistent with that rationale, they indicate that a defendant who commits two crimes in pursuit of two different objectives compounds his culpability and deserves more severe punishment. These and other decisions of our Supreme Court reiterate the basic rule that the divisibility of a course of conduct depends upon the intent and objective of the defendant.

Here the defendant's criminal acts of burglary, assault and theft were committed in pursuit of his purpose to accomplish at least two separate, insidious objectives and to harm two different victims.

Respondent properly concedes that section 669 of the Penal Code requires a holding that the two sentences imposed by the judgment in this case should be deemed to run concurrently. (See *People* v. *Chung,* 207 Cal.App.2d 660, 661 [24 Cal.Rptr. 637]; *In re Radovich,* 61 Cal.App.2d 177, 181 [142 P.2d 325].)

Accordingly, it is ordered that the judgment be modified to provide that the two sentences imposed herein shall run concurrently. As so modified, it is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1966.